Okay, our first case today is a consolidated matter. It is 415-0712 and 415-0715, Sinclair v. Jones and the City of Springfield. For the appellate, we have Jason Young and Steven Ron. Will you both be arguing? And have you conferred with the clerk about splitting your time? Very well. For the appellate, we have Gordon Gates. Okay, thank you. And before proceeding with argument, please be advised that the third panelist, presiding justice, cannot be here today. However, he has read the briefs and all the materials, and he will listen to the audio recording, and he will fully participate in deciding this matter. Having said that, please proceed. May it please the Court, Counsel, I am Steve Ron. I'm here on behalf of the City of Springfield. No person shall be deprived of life, liberty, or property without due process of law. Very familiar to all of us is the Fifth Amendment and Article I, Section 2 of the Illinois Constitution. A state actor violates the Constitution when it deprives a citizen of property without due process. In this case, notice. Now, my co-defendant's counsel, Mr. Young, will argue that the notice that the plaintiff received in this case was actually sufficient for due process purposes. I would like to touch very briefly on the city's argument that this is a summary judgment motion for a denial of due process. It isn't a typical zoning case in that we weigh the pros and cons of a particular zoning action. This was a denial of due process, a deprivation of property without proper notice. The case must be returned in this case because summary judgment was granted without any evidence of deprivation of property. The plaintiff alleged his property value declined. The defendants denied that allegation. No evidence was raised on that issue. Inexplicably, summary judgment was granted without a basic element of a denial of due process claim. Now, the plaintiff has argued in his brief that it's enough to show a lack of notice, that we're putting the cart before the horse because you get notice before there's a deprivation. Well, that's the definition of due process, but it's not what makes a cause of action for denial of due process. A cause of action for denial of due process is a deprivation without the notice. In this case, there's no evidence of a deprivation, no evidence that his property value has declined. We haven't gotten that far yet. In a personal injury case, liability arises when you have a breach of duty that results in an injury. Of course, you have to have the breach of duty first, but you still don't have a cause of action if there's no injury, regardless of whether there was a breach of duty. The same is here. You don't have a deprivation or a due process violation. You don't have standing to allege a lack of notice unless you had a deprivation of property. In this case, a diminution of value. What's your position as to the threshold for establishing such a deprivation to claim the right to due process, to notice? Yes, that there has to be a decrease in value. What is the threshold showing? A decrease in value. Some evidence that there was a decrease in value of his property. It's your position that there has been no such showing made in the pleadings or any evidence? That's correct. The pleadings were an allegation which was denied. The only evidence that they point to in the brief is that Mayor Houston, when he was vetoing the ordinance, said, I fear this is going to decrease property values. Well, politicians all the time say what they think is going to happen if a particular bill passes or doesn't pass. That's not evidence that it did happen or that it will happen. In this case, there's no probative evidence, and that's not even admissible. It's an out-of-court statement made by a non-present actor, so that's not admissible as summary judgment evidence. Here, there's just no evidence that there was a deprivation. Summary judgment was granted too soon. Without any further questions on that issue, I'll turn the matter over to my co-counsel. Okay, thank you. Okay, please support the counsel. My name is Jason Young. I'm here on behalf of Defendant Calvin Jones. As Mr. Ron addressed the standing issue, I'm going to address more of the fact that there was no procedural due process violation in this case. We feel that summary judgment was improper in this matter for three reasons. First, the ordinance as a whole granted a reclassification of the property and the conditional permit use to be used as a rehabilitation home. To make those things able to be done and in compliance with the city code and city ordinances, a variance had to be granted to the bulk regulations to allow this property to be reclassified. The plaintiff complains that they didn't have notice of this requested variance and that the variance was never requested up until the point in time when the city council member offered an oral amendment at the city council hearing. It is our position that no notice was necessarily needed for that specific variance. The plaintiff had sufficient notice of the requested reclassification of property and the conditional use. He attended several meetings. He was offered opportunities to speak at several of these meetings and offer his objections as to why this should not be done. At nowhere in any of the subsequent pleadings did the plaintiff at any point in time raise any objection to the variance other than that he had no notice that it was given. He never offered any reasons why he had a problem with this zoning ordinance as a whole simply because this variance was included. He simply objected to the reclassification of the property and the use of the property as a rehabilitation home. So our argument is that there was no procedural due process violation because he had notice of the requested change in the zoning ordinance as a whole. To find that no notice for one small aspect of the zoning ordinance and invalidate the entire ordinance based on that would seem to be inequitable. Further, Springfield is a home rule municipality and the case law indicates that failure to comply with the ordinances of the city when enacting a zoning ordinance is not in and of itself a constitutional violation. The plaintiff throughout his briefs and the trial court in particular stated in its order that the city and the defendants failed to comply with the applicable ordinances when enacting this zoning ordinance in that the request wasn't made in the initial complaint or notice wasn't properly included in the public notice and things of that nature. But those were all specific aspects of the procedure which in and of itself is not a procedural due process violation. For there to be a procedural due process violation, he would have to be denied meaningful notice and meaningful opportunity to object to this prior to the inaction. And in this case, he had those opportunities. Even if you look past all of the notice prior to anything or prior to the amendment, the amendment was made at a city council meeting. He was not present at that city council meeting. The ordinance was enacted. However, after that, the ordinance was vetoed and it was sent back to the next city council meeting. At that point in time, he had noticed that this variance was going to be included. He was there at the subsequent city council meeting. He had an opportunity to speak at that meeting prior to the ordinance being enacted. Were there any procedural limitations placed on Mr. Sinclair at that July 15th meeting that would not have been in place at the June 17th meeting? I don't believe there was. He was afforded an opportunity to speak in opposition of the ordinance. Did he speak? And he did speak at that subsequent city council meeting. And if anything, he would have had a lesser burden to meet at that point in time because they needed more votes to override the mayor's veto than they would have at the initial city council meeting. And that is the meeting where the final determination was made? That is correct. If they did not override the mayor's veto, the ordinance would have died. It would have been over at that point. But they overrid the veto and he had an opportunity to speak before that vote was made. So clearly he had notice of this variance, which was just a small aspect of the reclassification of the property anyways. And the variance was only made to make the zoning reclassification comply with the zoning ordinances of the city, which the zoning ordinances of the city are a violation of those ordinances and enacting this reclassification is not a constitutional violation. So our argument is simply that he had plenty of opportunity to speak in opposition of this zoning reclassification. He had plenty of notice of that. He had plenty of all of those aspects to comply with procedural due process. It was just this one variance, which he's never offered a reason why he objects to that variance other than he didn't get notice of it as trying to invalidate the reclassification as a whole. And given that he had the opportunity to speak prior to its enactment, we feel that summary judgment was inappropriate if there's no further questions. What relief are you requesting? We're requesting that the order on summary judgment be reversed and the case be remanded for further proceedings. Further until what? Continuing on with the complaint at this point. Just denial of this summary judgment because this was only one aspect of the complaint. It was only one count. So there is other counts that would remain. This was count two of the procedural due process violation. Count one was the substantive due process complaint. And you're saying it go back for consideration of that count? That's correct. That was never addressed by the trial court. So that would be our position that the case would pick up at that point. Okay. Thank you. Thank you. You'll have your bottle.  Morning. I'll address quickly the last statement there. There are indeed two counts to this complaint. The first count is the classic zoning count, simply saying that the action to grant the zoning was arbitrary, capricious, and has the LaSalle factors and things of that nature. Again, it's not before the court, however. The allegations of that count one were subsumed into the allegations of the second count. Mr. Gates, I'm sorry to interrupt you, but just before you get going here, we're talking about what would happen if it were to go back. The trial court, according to the order, dismissed count one as moot. And so that would have to be addressed by this court. That was going to be the next thing out of my mouth. I'm glad you jumped to that. It can't just be remanded that both of those have to be, if that's what's going to happen. Yes, her order was to make it appealable, and therefore she granted that motion to dismiss the count one. All right. The issues that we have really are twofold. I'll deal, first of all, with the statements by the city regarding the evidence we had. In their briefs, they argue, since it's a summary judgment, they argue that there are questions of fact regarding a key issue, and that is the injury suffered by my client. There are no questions of fact. They state that there is, but they've offered nothing, no evidence, no affidavits, no pleadings, nothing to raise a question of fact. What we allege in our complaint, and this is really what the court had, given the fact that it's a motion for summary judgment, the court had our allegation that my client owned four properties adjacent to Jones' property, paragraph six. We allege that Sinclair used his property for businesses catering to teenagers, paragraph five. We allege that Jones proposed to use his property for a rehabilitation group home for adult males who are impacted by drug dependency, incarceration, and family dysfunction. And then we allege in paragraph 18 that the city, through its mayor, stated in writing that the zoning in question would have a negative impact on the value of Sinclair's property. We allege those things. The city and Jones admitted every one of those things. Now they could make the argument that they denied the paragraph saying that our property was injured, but they admitted all these facts that I've just alleged, and they've admitted that the mayor stated in writing that the value of Sinclair's property was going to be negatively impacted. That's a judicial admission. It's there. I don't have to prove it anymore. Once it's alleged in the complaint and it's admitted by the other side, I don't have to prove it. So there it is. So they've admitted to those things, and more importantly, I think, they've admitted to the reasonable inferences to be drawn from those things. It's not just Mayor Houston's admissions. It's also the statements that say, we were adjacent property owners. Our property is used for business catering to teenagers. They want to put a rehabilitation home for convicted felons who are out on parole. Those, the reasonable inferences to be drawn from that have to include that the value of our property is going to be impacted by this use. We're entitled to those inferences at a motion for summary judgment stage. They, faced with those admissions and by those allegations, had an obligation to present some sort of evidence. They had an obligation to raise a question of fact. We all know that you cannot defend a motion for summary judgment by mere reference to statements, denials made in your answer. It can't be done. They had an obligation to put on evidence an affidavit from some sort of an expert, an affidavit from perhaps the current mayor, whatever, simply refuting our evidence. They did nothing. They rested on their pleadings. So the issue of whether or not my client's property suffered an impact, a detrimental impact on its value, it's done. We're done with that. That is no longer a question of fact. They've admitted it. The court was entitled to rely on it. I'm not sure I follow that. How did they admit that? First of all, they admit the three things that I think create the inference. They admitted it in their pleadings. It's a judicial admission. That alone, I think, without them raising something to refute that, is enough. We can argue that those three things create a reasonable inference of damage to the property. They also admit Mayor Houston's statement. Now, they can argue that that's not an admission against them. They can say, well, it's a politician with mere puffery. They're wrong. If I had this case and was getting it ready for trial, and I took the deposition of Mayor Houston, and Mayor Houston said, I know this town. I've lived here forever. This zoning will impact the value of this property. The mayor's position was not ultimately the one adopted by the city council. The city council doesn't refute his evidentiary statement. They did a balancing saying, we're okay, even if we concede. I mean, they didn't specifically say this, but you cannot, this court cannot, assume from their passage of the ordinance that they've decided that the mayor is wrong about whether or not there's going to be an impact on my client's property. That's not a reasonable inference? No. In any zoning case, there's always some detrimental impact on somebody. That's by its very nature. A city council can do the weighing. It has the power to weigh, okay, this guy's property loses value. This guy's property gains value. We're going to make a political decision that it's okay. That doesn't refute the factual evidence that the zoning does impact my client's property. So there's nothing anywhere that says that Houston's statement is wrong. And his statement, his opinion, is as good as anybody's opinion. I think it's an admission against evidence, and I think it comes in that way, or excuse me, an admission against interest. But I also think that his opinion is as valid as a realtor's opinion, an expert appraiser's opinion. It's as valid as anybody's opinion. That's all I would have. I think it carries a lot more weight because he happens to be the mayor, and he speaks on behalf of the city. I think it's notable, and I think following Your Honor's train here, yes, the ordinance is passed by the city council, but the mayor signs it. All ordinances are signed by the mayor. The mayor is the city. His position, his factual positions, are an admission by the city. That evidence is there. Yes, they could have refuted it. They could have put on some expert who said, no, it won't. This will be great. But Houston's statement, along with the three facts that I've alleged that create the reasonable inference, it's enough at that stage without them putting something on. Maybe they could have beat me. Maybe they could have had better evidence. They didn't. They didn't put anything on. So to me, that issue is kind of dead. The issue then regarding the due process violation. We've gone back and forth about whether or not, excuse me, regarding the notice part of the due process violation. We've gone back and forth about what level of notice has to be given, and also whether or not all I'm saying is they violated their own rules. Those aren't two different issues. Those are the same issue. The courts have consistently held that the level of notice that's required is fact-specific. You can't say this amount of notice is perfect for every case. It's fact-specific. Was the notice reasonably designed to give meaningful notice to the people who are going to be impacted? Did you try? Did you do enough that the average person, a reasonable person, would say, okay, I know what's going on. One of the things that goes into that decision is the rules that the city has. I'm never arguing, haven't argued in this case, that the violation of their own rules, which I think everybody concedes they did. They clearly violated their own rules. I never argued that the violation of their own rules, standing alone, is a violation of due process. That's not my position. My position is that the violation of their own rules is one of the things for you guys to look at to decide whether or not the notice that my client got was meaningful. He's entitled to know what those rules are, or he's entitled to the presumption from the courts that he knows what those rules are. He knows that if you want to get a variance, you have to ask for it. So when he gets notice saying, we're going to come in here and ask for a rezoning, but it doesn't ask for a variance, he's entitled, under the way the Constitution is interpreted by the courts, he's entitled to assembling all that knowledge and make the decision, okay, I know that they're not going to talk about this variance. So the violation of the city's internal rules is important. It's not enough on its own, but it's important for a fact-specific analysis that you people have to do to decide whether the notice that my guy got was meaningful, was sufficient. They've cited a whole bunch of cases that say that – that confuse, in my mind, the amount or level of notice with notice at all. There is no question that a sufficient notice is a moving target. It's a sliding scale. Assume you're right. Assume that the notice was effective as to the May 21st meeting. Go forward now to the July 15th meeting. How is it that everything wasn't remedied, basically, by your client's ability to address the city council at that meeting, such that it was no harm, no foul, from a due process standpoint? Holy cow. Was that there – I hope that's not personal to me, but all the docket showed was that it was going to be a veto session, that his veto was going to be discussed. That's sort of like, in my mind, it's a motion to reconsider before a judge. It's not a rehearing. You don't get a chance to put on all new evidence. It's a motion to reconsider. Is there something new? Is there something different? This was not a plenary redo. It was not a chance to come in and put on all your evidence. It was docketed as a discussion about the judge's veto. Do we have any of that in the record, just in terms of what was – from a procedural standpoint, how the July 15th hearing differed from the June 17th hearing, in terms of what could be done, what comments could be made, whether or not evidence could be presented? I believe that's in the record, yes. I think that – I don't know if you – I didn't have the tape recording of it, but I don't really know off the top of my head. They cite to it as – I think it's 88, RC88, but that, I think, is just the ordinance, the actual written part of it. The actual – excuse me – their argument is that my guy had notice for that July 15th hearing, or whatever you want to call that. There's no evidence that my guy had notice of that, other than the fact – and it's meaningful – he happened to be there. It was a regularly scheduled meeting. I'd say it's pretty meaningful. Right, exactly. He didn't have a written notice. There's no notice, but he's there. It's a city council meeting. There's all kinds of people there, and he did get a chance to be there. Did he make any comments regarding the variance? Not that I – no, no. He did – that issue was not – it's hard to argue what a layperson knew what was going on. The only thing he argued about at every city council meeting was the actual petition that had been filed. Okay? The petition that was on file – the complaint, if we're in legal terms – the complaint did not ask for that remedy. So his arguments were addressed to that remedy. Did he grasp the very technical difference between a variance and a rezoning? It doesn't appear that he did. He was unrepresented at the time. I'm not sure he – it's a difficult concept. Well, the city council's prior action of June 17th, that was – he had notice of that prior to the July 15th meeting, right? Which included the variance? We have no evidence of that, no. I mean, again, he showed up at the meeting. Is that what you're asking me? I've got the dates maybe confused. Yeah, right. At the rezoning meeting – The first meeting. No, no. I'm sorry. I'm sorry. At the override session, July 15th, when he came to that meeting, it was already a public record, the city council's vote on the variance request. Yes, it was public record. That's correct. And again, it's public record that Alderman Simpson moved to amend and add some more remedy to what was being asked for. Did – if you look at the comments that he made at the hearing, did he grasp the concept that there was something considerably more – I don't know. I mean, that's, I think, what you were asking me. I think it can be imputed, certainly, that he should have known at that point in time. But the point I'm making is a veto session is very different, and I think if you review the record, it's obvious a veto session is very different from the original plenary hearing. It's not a, I put on my evidence, you put on your evidence. It's mostly, can we support – can we aldermen vote and get enough votes to do what we already did, to reaffirm what we already did? And the vote was the same as it was the first time. Nothing changed. So it wasn't really a redo. It was more of a political process. It wasn't really an evidentiary hearing. It was a veto session. But the key is, as far as I'm concerned, is that the original order, the one that the judge vetoed, excuse me, the mayor vetoed, was tainted, clearly. It was a due process violation. And was it corrected by the judge's veto? And then the rehearing, I think if you look at the record, you'll see that it was not. It was not – there was no meaningful opportunity for my client to be prepared. And I do want to point something out, because it matters in my argument that their violation of their own rules comes into play in the totality of the review. Zoning cases have three steps. There's a review by the professional staff, the Seligman County Regional Planning Commission. Then there's a review by the zoning committee, a committee of nine people. And then there's a recommendation to the city council. At every stage, there's due process rights. There's a right to be heard by the objectors. In this case, they violated those rules. There was never a ruling by the professional staff regarding a variance. There was never a ruling by the committee, the zoning committee, nine people, regarding the variance. So at every step of the way, my client has an expectation of those rules being enforced. And I think that matters to the level of notice he was entitled to get. Yeah, they cite landmarks and the condominium, but that's for the proposition that the city council didn't follow its own ordinances. But your challenge here wasn't as to them not following their own ordinances. It was that you didn't have – your client didn't have notice of the proposed variance. Right. But the fact that they didn't follow their own rules plays into that, because it is a fact-specific decision as to whether or not the notice was sufficient. Did my guy, would a reasonable person, recognize that this issue was going to be heard that day? And I think a reasonable person knows what the rules are and is entitled to rely on those rules that feeds into what he perceives this notice is. And if he knew the rules and knew that you were supposed to have these variances in your petition that were supposed to be heard by the professional staff, then by the committee, then by the city, and none of that stuff happened, what notices he did get, which I think we're all agreeing today, the only notice he got was some notice that made him show up at the July 15th hearing. That's it. That's all we have. Was that notice, based upon all this other stuff, meaningful notice? Was it designed to tell this guy – it's from their perspective and from our perspective, it's subjective – was it reasonably designed to advise the person what was on the docket? And it wasn't, based upon the totality of the circumstance. The fact that they repeatedly violated their own rules, it was clearly whatever notice he got, which may just have been a website saying, hey, this veto is coming up for hearing. Because there's nothing in the record that was sent directly to my guy saying, oh, by the way, show up. And nothing that was posted on the door saying, oh, by the way, show up. The best that we have in the record is that it was set for a veto hearing at the regularly scheduled city council meeting. Is that enough notice? Is that sufficient notice, based upon the totality of the circumstances, for this guy to have a meaningful understanding of what was on the docket? I would submit to you, no way. He doesn't know. It's a veto session. He doesn't have a chance to know whether or not this particular issue was on the docket. Council stated that the variance is a small matter. It's not a small matter. It's a huge matter. Bulk requirements are probably the most important part of the zoning code. It's the thing that says your house can't be right up next door to the guy next to you. It's the part that says it's got to be back from the street. Those are the parts of the zoning that you and I know about. It's not a small matter. It's a huge matter. That's the amount of time. Thank you. Thank you, counsel. Is there any rebuttal? Very briefly on the deprivation issue. The moving party in a motion for summary judgment has the obligation to present evidence to establish it before the responding party needs to respond. In this case, he does allege the mayor said what he thought it would happen, and we did admit, that is a judicial admission that the mayor said that. It's not a judicial admission of the proof of the matters asserted. That's classic hearsay, and there's no exception for political statements based upon the inherent trustworthiness of politicians. That's not an exception to the hearsay rule. There is no admissible evidence of a decrease in property value. Procedure due process notice is fact specific. In this case, it's our position that there was sufficient notice. He's never complained about the variance, and yes, bulk regulations are important, but if you look at the specific variance that was granted in this case, it was the variance to allow for a smaller lot to be used as a rehabilitation facility. It had nothing to do that would affect anybody else's property other than this property. It basically allowed them to use a smaller piece of property for a rehabilitation home. And to invalidate the entire zoning reclassification based on this one variance, I would think is not proper. The variance is, the bulk regulations are the city's own ordinances. They create those. Those are their own rules that they are making themselves follow. The fact that they granted this variance to comply with these rules is what landmark and condominium are also about. It's not just the procedures that were done, but it was these are the ordinances that we put in place for zoning. These are the bulk regulations for this type of property. The other count, count one, which is the substantive due process count, it addresses the passage and enactment of docket number 2014-029, and that encompasses as well the variance. Is that right? Correct. And as counsel stated, he, the plaintiff didn't have a problem or didn't know to have a problem with the variance or the lack of the notice of the variance until after the ordinance was enacted. Then he's like, well, yeah, I didn't want this whole thing to go down. I didn't want this property to be rezoned for use as a rehabilitation home. It was only after filing the complaint that they realized, well, you know what, you didn't have notice of the variance. He didn't have a problem with the variance throughout the entire process. He had a problem with the reclassification of the subject property. It was only after that he lost on that and the reclassification was done that he now had a problem with this variance because, well, I didn't necessarily have perfect notice of that, but he did have meaningful notice. He appeared at the veto meeting, had an opportunity to speak after the variance had been adopted by the city council and vetoed. So it wasn't ultimately adopted until after he had a meaningful opportunity to speak at that subsequent city council meeting. Again, we just ask that it be reversed and remanded. Okay, thank you. Indeed, thanks to all of you. The case is submitted and the court stands in recess.